IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| EVGENIYA SUKACH, | Civil No. 24-00026 MWJS-WRP |
| Plaintiff, | ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |
| vs. | |
| MARTIN O'MALLEY, Commissioner of Social Security, | |
| Defendant. | |

## <u>INTRODUCTION</u>

Plaintiff Evgeniya Sukach appeals the Commissioner's denial of her applications for disability-related Social Security benefits. She argues that the Commissioner—acting through an Administrative Law Judge, or ALJ—improperly rejected her testimony about the severity of her pain symptoms. She also argues that the ALJ should not have credited the testimony of a medical expert and should have credited her own treating physician.

The Court agrees that the ALJ made some errors in considering Sukach's symptom testimony. But because the ALJ provided a separate valid reason for disbelieving Sukach's testimony, and because that reason is supported by the record, the other errors are harmless. Moreover, any error in the ALJ's consideration of the medical expert's testimony is similarly harmless, because the ALJ credited the opinion

of two other experts who had reached similar conclusions.  For these reasons, the Court

AFFIRMS.

<u>BACKGROUND</u>

In August 2018, Sukach applied for Social Security disability and disability

insurance benefits, as well as supplemental security income.  ECF No. 12-3, at PageID.52

(Administrative Record (AR) at 17).  She claimed her disability began on July 1, 2017.

*Id.*  After her claims were initially denied, Sukach requested a hearing before an ALJ.  *Id.*

**A.      The ALJ Hearing**

**1.      Sukach's Hearing Testimony**

The hearing took place on December 14, 2022, and Sukach testified.[1]  One area of

testimony concerned her pain symptoms and prior work history.  Sukach testified that

until July 1, 2017, she had been working in the field of in-home support services, taking

care of her 100-year-old grandmother in California.  In that role, Sukach "was doing

everything": "cleaning, bathing, cooking, taking her whatever she needed because she

was disabled."  *Id.* at PageID.85 (AR at 50).  When the ALJ asked Sukach why she

stopped working in this role in July 2017, Sukach began by explaining that she was

having "pain attacks" in her "back."  *Id.* at PageID.86 (AR at 51).  According to Sukach,

these "pain attacks" would radiate from her back to her belly area.  *Id.*  And they

---

[1]      Because of the COVID-19 pandemic, and with Sukach's consent, the hearing was
conducted by telephone.  ECF No. 12-3, at PageID.52 (AR at 17).  Sukach was
represented by counsel at the hearing and testified with the aid of an interpreter.  *Id.*

became "more frequent," to the point that she became "scared of driving" and would "drive only in very few occasions" when necessary.  *Id.*

Sukach then added that she and her husband had moved from California to Hawaiʻi in the summer of 2017.  *Id.*  Sukach explained that they made this move because her husband "had two jobs, and he was advised he had to change his climate." *Id.* at PageID.86-87 (AR at 51-52).  When the ALJ asked why Sukach did not pick up in-home support service work or something similar after arriving in Hawaiʻi, Sukach answered that she was experiencing pain even while taking care of her grandmother in California, but that "despite . . . my strong headaches and pain in the back, I was still able to take care of her somehow."  *Id.* at PageID.87 (AR at 52).  The ALJ followed up: "But why couldn't you—once you moved here, why couldn't you do any kind of a job, even one where you could sit all day?"  *Id.*  Sukach answered that it was because of her pain in her back, which she described "as if I feel like somebody was kicking me in my back."  *Id.* at PageID.88 (AR at 53).

According to Sukach, as of the time of the hearing, she could not walk on a flat surface for longer than two minutes, and she would then need to take a break for "15, 20, 30 minutes of break."  *Id.* at PageID.89 (AR at 54).  Sukach testified that she could only stand for "[m]aximum five minutes," that she could only sit in one place for a minute before needing to change positions, and that she could not carry any object heavier than two pounds.  *Id.* at PageID.90-91 (AR at 55-56).  Sukach also testified about

pain in her feet, headaches, and pain in her back and abdomen.  *Id.* at PageID.91-92 (AR at 56-57).  And when asked how often she has "trouble focusing," Sukach answered, "all the[] time."  *Id.* at PageID.92 (AR at 57).

In light of Sukach's testimony about her significant pain symptoms, the ALJ inquired into what activities Sukach undertook on a daily basis.  Sukach answered that in the mornings, she "prepare[s] something light" to eat—"for example, to cook eggs or to spread some butter on piece of bread, something like that."  *Id.* at PageID.88 (AR at 53).  Sukach further explained that because her husband has renal failure and is in a lot of pain, she helps to "keep notes about him."  *Id.*  After taking notes for her husband, she rests.  *Id.*  Then, "closer to dinnertime," she uses the "pressure cooker and prepare[s] something which doesn't require long standing."  *Id.*  And if her daughter is home, they go to "buy groceries," typically "once a week or every two weeks."  *Id.*  Sukach's daughter would do "everything," but Sukach would "tell[] her what to buy."  *Id.*

The ALJ asked how Sukach was able to "take care of [her] husband" if she herself is in "such severe pain all day?"  *Id.* at PageID.94 (AR at 59).  Sukach answered that she does not do "too much for him."  *Id.*  Sukach characterized her role as simply "writ[ing] down information" regarding his weight and blood pressure at some point during the day.  *Id.*  The ALJ asked why her husband could not handle those simple tasks himself.

*Id.*  Sukach testified that her husband is "scared that he will be confused and mix up something."  *Id.*

Other documents in the record prompted questions—perhaps skeptical ones— from the ALJ.  One was a form that Sukach filled out in 2018, the year she applied for benefits, in which Sukach reported that she would go somewhere with her husband and "enjoy the day."  *Id.* at PageID.88-89 (AR at 53-54).  When the ALJ asked about this form, Sukach answered that she and her husband used to go to the ocean:  "We were walking.  We were swimming."  *Id.* at PageID.89 (AR at 54).  But, Sukach explained, because of her husband's dialysis, "we can't swim any longer."  *Id.*  Sukach explained that they still sometimes go to "the ocean, but I can't sit for a long time because of pain in my back."  *Id.*  Sukach added that in 2018, she could "walk and swim about 30 minutes," but that her condition had deteriorated since then and she could no longer do so.  *Id.*

The ALJ also asked Sukach about records that showed she took care of pets. Sukach responded:  "I don't have pets anymore."  *Id.* at PageID.95 (AR at 60).  When asked when she stopped taking care of her pets, Sukach answered that she had gotten rid of her pets about a year before the December 2022 hearing.  *Id.*  Prompted by her counsel, Sukach clarified that in caring for her pets—dogs and cats—she did no more than feed them, and that the "rest was done by my daughter."  *Id.*

### 2.    Other Exhibits and Evidence

In addition to the testimony of Sukach, the ALJ heard testimony from a vocational expert, June Hagen, and from a medical expert, Dr. William Biles.  Sukach did not object to Dr. Biles's testimony at the hearing, and Dr. Biles opined that Sukach could perform light work with certain restrictions.

The ALJ also admitted into the administrative record Exhibits 1A through 31F, which included a medical opinion from Sukach's physician, Dr. Nancy Jeffers; the opinions of two Hawai'i state agency consulting physicians, Dr. N. Shibuya and Dr. S. Lau; and various records concerning examinations and treatment of Sukach.  *Id.* at PageID.105-1142 (AR at 69-1101).

### B.    The ALJ Decision

The Social Security regulations require ALJs to follow "a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act."  *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe?  (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also* 20 C.F.R. § 404.1520.

In a written decision issued on January 9, 2023, the ALJ proceeded through each of these sequential steps.  At step one, the ALJ found that Sukach had not been engaged in substantial gainful activity since July 1, 2017.  ECF No. 12-3, at PageID.54 (AR at 19).  At step two, the ALJ found that Sukach had the following severe impairments:  bilateral mixed hearing loss; chronic migraine headaches; mild levocurvature of the lumbar spine; chronic pelvic pain of unclear etiology; hypermobility syndrome; plantar fasciitis; and obesity.  *Id.* at PageID.54-55 (AR at 19-20).  At step three, the ALJ concluded that Sukach's impairments were not equivalents of a listed impairment.  *Id.* at PageID.55 (AR at 20).

In connection with steps four and five, the ALJ determined Sukach's residual functional capacity, or "RFC," and concluded that Sukach had the capacity to do light work with certain restrictions.  *Id.*  In support of this conclusion, the ALJ relied on the testimony of Dr. Biles, which the ALJ found to be "largely persuasive as it is well-supported by detailed hearing testimony with references to the record and is consistent with the evidence."  *Id.* at PageID.60 (AR at 25).  The ALJ also noted that Dr. Biles was "a board-certified internal medicine specialist with knowledge of the disability program" and that he "had access to the most recent medical evidence available in the record."  *Id.*

The ALJ's RFC assessment did not rest solely upon Dr. Biles's opinion, however. The ALJ also "considered the opinions of State agency consulting physicians,

N. Shibuya, M.D., and S. Lau, M.D., both of whom opined that the claimant could perform light work" with certain limitations.  *Id.*  The ALJ pointed out that the opinions of N. Shibuya and S. Lau were similar to that of Dr. Biles.  *Id.*

The ALJ also considered and rejected the opinion of Dr. Jeffers, Sukach's treating physician, who had opined that Sukach would be "unable to function at a productive level of work."  *Id.*  The ALJ explained that Dr. Jeffers apparently had only treated Sukach in December 2020 and April 2021, and that Dr. Jeffers's "treatment records reveal only clinic abnormalities including obesity and swelling of the ankles," with "no evidence of any additional clinical abnormalities to support either her numerous diagnoses . . . or the extreme limitation in function described in her opinion."  *Id.*  For those reasons, the ALJ found that Dr. Jeffers's opinion was neither "well supported" nor "consistent with the evidence of record."  *Id.*

In addition to the medical evidence, the ALJ considered Sukach's testimony about the severity of her pain symptoms.  Here, the ALJ concluded that Sukach's testimony "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  *Id.* at PageID.56 (AR at 21).[2]  After summarizing that evidence in some detail, *id.* at

---

[2]     As the Ninth Circuit has explained, "ALJs commonly use the phrase 'not entirely consistent' the same way the ALJ did in this case—to mean that the claimant's testimony is *inconsistent* with other evidence in the record."  *Smartt v. Kijakazi*, 53 F.4th 489, 499 n.2 (9th Cir. 2022).  That said, as the Ninth Circuit has also explained, ALJs

8

PageID.57-59 (AR at 22-24), the ALJ identified three specific reasons for rejecting

Sukach's symptom testimony.  First, the ALJ explained that "after considering the

objective medical evidence regarding all of the claimant's physical conditions," the ALJ

found "that the clinical findings simply fail to support the alleged severity of symptoms

and degree of limitation."  *Id.* at PageID.59 (AR at 24).  Second, the ALJ described

Sukach as having "indicated fairly full activities of daily living," and that she at one

point could "walk a mile."  *Id.*  Third, the ALJ found that Sukach's "course of medical

treatment" contradicted Sukach's testimony about the severity of her pain.  *Id.*  That

course of treatment included instances in which Sukach declined or did not pursue

treatment options, as well as statements that Sukach made during a physical therapy

intake assessment in 2019 in which she indicated that she could "tolerate her pain

without having to use pain medications" and that she could "take care of herself

normally without increased pain."  *Id.*

Sukach requested a review of the ALJ's decision, which the Appeals Council

denied, making the ALJ's decision the final decision of the Commissioner.  *Id.* at

PageID.36-41 (AR at 1-6).  She then appealed to this Court, which has jurisdiction under

42 U.S.C. § 405(g).

---

"might consider replacing the phrase 'not entirely consistent' with simply

'inconsistent'" to avoid misunderstandings.  *Id.*

## STANDARD OF REVIEW

This Court must affirm an ALJ's disability determination unless "it is either not supported by substantial evidence or is based upon legal error." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). And while "substantial" means "more than a mere scintilla," it requires "only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (cleaned up). This standard "is not high," *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), and "if evidence exists to support more than one rational interpretation," the Court "must defer to the [ALJ's] decision," *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 & n.1 (9th Cir. 2004). Ultimately, the "ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008).

These review standards are deferential because, "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (cleaned up).

//

//

## DISCUSSION

On appeal, Sukach argues that the ALJ offered insufficient reasons for rejecting her symptom testimony.  Sukach also argues that the ALJ did not properly consider the opinions of medical experts.  The Court considers each argument in turn.

### A.    Sukach's Pain Testimony

On review of the cold hearing transcript, it appears that there are certain aspects of Sukach's testimony that gave the ALJ pause, but that the ALJ did not cite as reasons for discrediting her testimony.  As one example, Sukach testified that she performed full-time work up until she and her husband moved to Hawaiʻi in 2017, but that she did not pursue any work after moving to Hawaiʻi.  And while she claimed she did not pursue work in Hawaiʻi because of extraordinarily severe pain symptoms, she also admitted to going swimming in the ocean with her husband in 2018, the same year she applied for disability benefits.  The hearing transcript suggests that the ALJ may have found these—and a few other—answers somewhat questionable.  But in the end, the ALJ did not base the credibility assessment on these aspects of Sukach's testimony, and the Court may not "affirm[] the ALJ's determination for a reason that the ALJ did not assert." *Ferguson v. O'Malley*, 95 F.4th 1194, 1203-04 (9th Cir. 2024).  The Court therefore turns to the ALJ's stated reasons.

As noted earlier, the ALJ appears to have offered three reasons for rejecting Sukach's symptom testimony:  (1) that the objective medical evidence and clinical

findings "simply fail to support" Sukach's testimony; (2) that Sukach's activities of daily living were inconsistent with her hearing testimony; and (3) that Sukach's "course of medical treatment" contradicted her pain testimony.  ECF No. 12-3, at PageID.59 (AR at 24).

The first of these reasons is not an appropriate basis for rejecting symptom testimony.  As the Ninth Circuit has explained, "it is the very nature of excess pain to be out of proportion to the medical evidence."  *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).  For that reason, "[a]n ALJ may not discredit a claimant's subjective testimony" on the basis that "no objective medical evidence" supported the testimony "regarding the severity of subjective symptoms."  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792-93 (9th Cir. 1997).  And while it would have been appropriate for the ALJ to rely on an *inconsistency* between Sukach's testimony and the objective medical evidence, *see Smartt v. Kijakazi*, 53 F.4th 489, 497-99 (9th Cir. 2022), the ALJ did not identify any inconsistencies here.  When, as here, the ALJ identifies no *inconsistency* between the objective medical data and a claimant's subjective symptom testimony, it is not appropriate for the ALJ to reject the testimony solely because the objective medical data do not *support* the claimant's testimony.  *See id.* at 498 (explaining that "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by

demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony") (cleaned up).[3]

The ALJ's second reason related to Sukach's activities of daily living. The ALJ described Sukach as having reported fairly full daily activities, and as at one point having been capable of walking a mile. This reasoning, too, does not suffice to contradict Sukach's symptom testimony. The Ninth Circuit has cautioned that "disability claimants should not be penalized for attempting to lead" their "lives in the face of their limitations." *Auapaau v. O'Malley*, Civil No. 24-00176, 2024 WL 4301378, at *3 (D. Haw. Sept. 26, 2024) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). "To safeguard against that danger, the Ninth Circuit has provided guidelines for using evidence of a claimant's activities of daily living to assess a claimant's symptom testimony: If a medical impairment has been established, and there is no evidence that the claimant is malingering—that is, exaggerating or feigning their illness—then 'the ALJ must provide specific, cogent reasons' for disbelieving the claimant's symptom testimony, and those reasons 'must be clear and convincing.'" *Id.* (quoting *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007)). In this case, the ALJ did not meet these

---

[3]     To be sure, the ALJ more generally stated that Sukach's testimony was "not entirely consistent" with the record, and as noted, ALJs commonly use that phrase to refer to an inconsistency with other evidence in the record. *See supra* note 2. But this generalized reference to an inconsistency is not enough to identify an actual inconsistency between objective medical evidence and Sukach's testimony, which the ALJ did not do.

rigorous standards.  Even accepting that the ALJ's description of Sukach's daily

activities as "fairly full" were accurate, the ALJ offered no explanation—let alone

specific, cogent ones—for concluding that these activities contradicted Sukach's pain

testimony.  The same is true of the ALJ's reference to Sukach's ability to walk for a mile

at one point.  The ALJ generically referred to this as being "inconsistent with her

hearing testimony," ECF No. 12-3, at PageID.59 (AR at 24), but offered no reason why

the ALJ perceived this to be the case.

Yet while the ALJ's first and second reasons for rejecting Sukach's symptom

testimony are insufficient, the ALJ's third reason is valid and supported by substantial

evidence.  Here, the ALJ separately explained that Sukach's course of medical treatment

was inconsistent with her symptom testimony.  The ALJ explained that the medical

records showed that at various times, Sukach declined or did not pursue medical

treatment for her impairments.  For example, Sukach "has not sought treatment with an

orthopedist for her allegedly disabling back pain."  *Id.*  Likewise, "[t]here is also no

indication of any treatment with a neurologist or headache specialist since 2020."  *Id.*

And the "medical evidence also indicates" that Sukach "frequently declines treatment

offered by her various providers."  *Id.*

This third line of reasoning is legally appropriate.  The Ninth Circuit has made

clear that an ALJ may use "evidence of conservative treatment" to discount a claimant's

testimony regarding the severity of their impairment.  *Smartt*, 53 F.4th at 500 (internal

14

quotation marks omitted).  Moreover, the ALJ's findings on this score are supported by substantial evidence in the record—that is to say, there is enough "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022).  Granted, this Court might not have reached the same conclusion as the ALJ had it been sitting as the fact finder.  And Sukach makes arguments about the record and suggests the ALJ should have viewed aspects of that record differently.[4]  But the ALJ is "the final arbiter with respect to resolving ambiguities in the medical evidence." *Smartt*, 53 F.4th at 496 (cleaned up).  In reviewing the ALJ's work, the "standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Id.* at 499.  It does here.

Because the ALJ's third ground for rejecting Sukach's symptom testimony is legally appropriate and supported by substantial evidence, the Court may not disturb that determination even though the first two grounds were improper.  Error in the first two grounds is "harmless" because it "does not negate the validity of the ALJ's ultimate

---

[4]     She argues that Sukach had legitimate reasons for declining certain treatments, including that she would have had to fly off island to see a spinal surgeon, that she was allergic to steroid (though not other) injections, and that she apparently was reluctant to seek some treatment—for example, according to her treating physician, Sukach had to be "coached" to ask for a referral to a surgeon.  ECF No. 18, at PageID.1163-65.  Sukach also declined some treatments because she believed they would "hurt too much." *Id.* at PageID.1164.  Although the Court may well have credited some of these explanations were it the finder of fact, it must defer to the ALJ's resolution of ambiguities in the medical evidence.

conclusion that [Sukach's] testimony was not credible." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004); *see also Mykhaylychenko v. O'Malley*, Civil No. 23-00483, 2024 WL 2798073, at *4 (D. Haw. May 31, 2024) ("As the Ninth Circuit has explained, so long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, the error is deemed harmless and does not warrant reversal." (cleaned up) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).  Accordingly, the ALJ's rejection of Sukach's hearing testimony affords no basis for reversal here.

## B.    Medical Expert Opinions

Sukach raises a separate argument for remand:  that the ALJ did not properly consider the opinions of medical experts.

As an initial matter, the Court finds that the ALJ's rejection of Sukach's treating physician, Dr. Jeffers, was appropriate.  The ALJ reasonably understood Dr. Jeffers as not having identified any objective medical evidence or clinical findings to support her opinions that Sukach was unable to work because of the severity of her pain symptoms.  Given that Dr. Jeffers's opinions were reasonably understood as having been based essentially on subjective information provided to her from Sukach, the ALJ's rejection of Sukach's symptom testimony naturally supported the ALJ's rejection of Dr. Jeffers's opinions as well.  *See Laronge v. Berryhill*, 685 F. App'x 519, 521 (9th Cir. 2017) (holding

that it was "reasonable for the ALJ to reject the disability opinions offered by the medical professionals who met with Laronge," because those opinions "were based on Laronge's subjective complaints and on testing within her control," and the ALJ had found Laronge "not credible" (cleaned up)).

The ALJ's consideration of Dr. Biles's testimony is more problematic. At the time of the hearing, Dr. Biles was under a term of probation "for failing to meet the standard of care for the management of chronic pain and prescribing controlled substances." ECF No. 21, at PageID.1211. True, Sukach did not object to Dr. Biles's testimony at the hearing when given a chance to do so. But Sukach raised this objection after the hearing had ended. And the objection is a weighty one, since Dr. Biles offered opinions about the management of chronic pain in his hearing testimony. The ALJ's decision did not acknowledge this issue or offer any explanation for why the ALJ was still finding Dr. Biles's opinions credible.

The Court need not, however, definitively resolve whether these problems would warrant remand. That is because the ALJ separately found the opinions of Dr. N. Shibuya and Dr. S. Lau persuasive, and those medical experts offered opinions that dovetailed with the opinion of Dr. Biles. Sukach's opening brief makes no argument against the credibility of these medical experts. Accordingly, any error in the ALJ's consideration of Dr. Biles's testimony would be harmless. *See Brown-Hunter v.*

*Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (explaining that an error is harmless if it is "inconsequential to the ultimate nondisability determination").

<u>**CONCLUSION**</u>

For the foregoing reasons, the Commissioner's decision denying Sukach's applications is AFFIRMED.

IT IS SO ORDERED.

DATED:  October 24, 2024, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

_____

Civil No. 24-00026 MWJS-WRP; *Evgeniya Sukach v. Martin O'Malley*; ORDER AFFIRMING
DECISION OF THE COMMISSIONER OF SOCIAL SECURITY